IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | :   CRIMINAL CASE NO.: |
| MICHAEL BATTLE, | :   1:20-CR-252-AT-JSA |
| Defendant. | : |

## REPORT AND RECOMMENDATION

It has been over 20 months since Defendant's arraignment on this gun possession indictment. It has also been approximately five (5) months since the District Court found Defendant to be incompetent and ordered him to be transported to a federal medical center for treatment for restoration. And yet to the undersigned's understanding, Defendant remains in local custody awaiting transport. Defendant thus has filed a Motion to Dismiss for Speedy Trial Violation [76].

The undersigned joins in Defendant's frustration as to the delays in transportation for restoration treatment. But there is no basis to dismiss under the calculations required by the Speedy Trial Act, 18 U.S.C. § 3161, *et seq*. Nor does this record support dismissal based on a constitutional violation under the Sixth

1

Amendment. The undersigned therefore must recommend that Defendant's Motion To Dismiss [76] be **DENIED**.

## I. PROCEDURAL HISTORY

Defendant was brought into Court and was arraigned on July 17, 2020, on the basis of a Writ of Habeas Corpus ad Prosequendum issued to the warden of the state jail at which Defendant was detained [5][7]. The Government filed a Motion for Detention on that same day [9], and the Defendant filed a Motion for Release from Custody [10]. However, the issue of detention was held in abeyance by the arraigning Magistrate Judge, because Defendant had been brought into Court on a writ from state detention, and thereby the issue of detention or bond under the Bail Reform Act was not yet ripe. *See* Tr. of Initial Appearance [21] at 7. To this date, the motion for detention and Defendant's motion for release remain pending, as the Defendant apparently remains held on the basis of the state detainer.

Numerous other motions have been filed since July 2020, principally in the form of motions to continue by the Defendant. On July 29, 2020, Defendant's original counsel filed Defendant's first motion for extension of the pretrial motions filing deadline and pretrial conference [13], which motion was granted by Order that specifically found that the ends of justice in granting the continuance outweighed the Defendant's and the public's right to a speedy trial [14]. Two more extensions were requested by original counsel and granted by the Court with

similar ends-of-justice findings [16][17][19][20]. These extensions continued the pretrial conference, which had been originally scheduled for August 5, 2020, until November 19, 2020.

Original counsel then filed a Motion to Withdraw as Attorney [26] on November 13, 2020. The Court set a hearing on November 16, 2020, but that hearing needed to be reset ultimately to December 3, 2020 [28]. After the hearing, the Court granted the motion and appointed current counsel [29]. The Court thereby set another deadline for pretrial motions and for a pretrial conference [33], as to which Defendant filed another motion to continue on January 5, 2021 [34]. The Court granted the motion, and continued the hearing until March 19, 2021, and again included the necessary findings as to the ends-of-justice supporting the continuance [35].

Defendant filed another motion to extend on March 2, 2021 [44], which the Court again granted (again with ends-of-justice findings) [48], extending the pretrial conference until May 19, 2021. Contemplating the possibility of competency-related issues, counsel during this time period also filed, and the Court generally granted, numerous motions for Rule 17(c) subpoenas seeking medical and related information. *See generally* [37-46].

In the meantime, the entire time period of this case from its inception through May 2, 2021 was also covered by General Order 20-01 of the District

Court, and six amendments filed thereto during the life of the case. This series of emergency orders was necessitated by the COVID-19 pandemic and the severe impacts this crisis imposed on the court and the health impacts of maintaining trials and other proceedings. These orders generally excluded all time through May 2, 2021 from Speedy Trial Act calculations under 18 U.S.C. § 3161(h)(7)(A).

The Defendant eventually also filed a motion seeking to be evaluated. The undersigned ordered the Defendant to be placed in a suitable medical center for evaluation, in accordance with 18 U.S.C. §§ 4247(b) and (c) on May 5, 2021 [53]. The Court set a competency hearing for September 16, 2021 and excluded all time through that date based on ends-of-justice findings. [53]. The Court later continued that September hearing at Defendant's request [59], with ends-of-justice findings, until October 14, 2021 [60]. On October 14, 2021, the undersigned convened a competency hearing, at which Defendant's lack of competency was conceded by both parties based on the evaluation report from the Bureau of Prison's ("BOP's") examiner [63]. Thus, that same day, the undersigned issued a Report and Recommendation ("R&R") finding Defendant to be incompetent and recommending that Defendant be placed back in BOP custody for restoration treatment [64]. Defendant signaled his lack of objections to the R&R with a filing on October 15, 2021 [65].

The District Judge thereafter issued an Order adopting the R&R on November 4, 2021 [69]. The District Judge ordered the Defendant to be placed in BOP custody for purposes of hospitalization for restoration of competency and referred the matter to the undersigned to hold a further hearing, within four months (i.e., by March 4, 2022). *Id*. The undersigned thus set a hearing for March 1, 2022. Nevertheless, the Defendant was not actually transported to any federal medical center as the District Judge's Order had required. The Court understands, from the U.S. Marshals Service, that no designation had been received from the BOP because of a lack of bed space at a hospital facility. As of the date of this writing, however, the undersigned has been told that Defendant is finally scheduled for transportation to FMC Butner on April 26, 2022.

The Court has reset the competency restoration hearing for June 7, 2022, in the hopes that the necessary treatment can be provided, a report can be prepared, and the Defendant can be transported back to this District if necessary. As the Defendant had, in the meantime, moved to dismiss on Speedy Trial Act grounds, the Court reserved making any findings as to whether the June 7 continuance is supported by the ends of justice pending consideration of the Defendant's Motion.

## II. DISCUSSION

### A. *The Speedy Trial Act*

The Speedy Trial Act requires that a federal criminal defendant be brought to trial within seventy days of "the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

Far more than 70 days have passed from Defendant's first appearance on these charges. But, importantly, the Speedy Trial Act excludes the time period associated with certain delays from that seventy-day clock. The first exclusion relevant here is for any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). Also excluded is any period covered by a continuance ordered by the Court, on the basis of a motion by a party or the Court's own motion, "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

The Speedy Trial Act also excludes time associated with the transportation of a Defendant on a Court's order, including for hospitalization or examination, or

for removal to another district, or for any other reason, although any such period of transportation beyond 10 days is presumptively unreasonable. 18 U.S.C. § 3161(h)(1)(F). Further, of critical importance here, the Speedy Trial Act also categorically excludes "*[a]ny* period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." 18 U.S.C. § 3161(h)(4) (emphasis added).

Defendant points out that the allotted ten days allowed for transportation after the Court's November 4, 2021 have come and gone, and that he nevertheless remains in local custody in this District more than five months later. Thus, the Defendant argues that any Speedy Trial Act exclusion associated with the competency restoration process has long since stopped, and that this prosecution is now in violation of the Speedy Trial Act.

Defendant's Speedy Trial Act motion fails on several grounds. First, as a technical matter not even addressed by the parties, there remains two motions still pending that were filed at initial appearance relating to the issue of detention [9][10]. These motions cannot be resolved without a hearing, but the arraigning Magistrate Judge properly stayed them because the Defendant remains subject to state court detention and is currently in federal custody only on a writ from a state jail. *See* Tr. of Initial Appearance [21] at 7. As a technical matter, the pendency of

these not-yet-ripe motions at least arguably has tolled the Speedy Trial "clock" since the day of arraignment under 18 U.S.C. § 3161(h)(1)(D).

Second, more importantly, the Defendant has been found to be incompetent to stand trial, and remains unfit for trial unless and until restoration can be attempted and is successful. The Speedy Trial Act is clear that "any period of delay" resulting from a Defendant's incompetency is to be excluded. This covers all of the time in this case at least since the finding of incompetency in November 2021. As nearly all of the time before November 2021 was indisputably excluded on a variety of grounds, including seriatim ends-of-justice continuance orders requested by the Defendant, there is no Speedy Trial Act violation.

Defendant points out that the Speedy Trial Act only considers up to 10 days for transportation (to a hospital or otherwise) to be presumptively reasonable. But the Eleventh Circuit has specifically stated, "if a defendant is mentally incompetent under § 3161(h)(4), that time is excludable even if there is also a transportation delay that is unreasonably long and thus not excludable under § 3161(h)(1)(F)." *United States v. Pendleton*, 665 F. App'x 836, 839 (11th Cir. 2016). While *Pendleton* is unpublished, and thus only constitutes persuasive (not binding) precedent, the decision embodies a straight-forward reading of the statute. Periods of delay obviously can be simultaneously covered by different subsections of the statute, in whole or in part. Indeed, A particular period of time might be excluded

8

on numerous bases at the same time. In this case, for example, substantial time has been indisputably excludable on several overlapping bases, including because of the pendency of motions, the existence of an ends-of-justice continuance, the Defendant's incompetency, and even the need for transportation for at least some period of time. The fact that one of those statutory bases might expire does not mean that other subsections might not continue to apply.

As noted, Section 3161(h)(4), which categorically excludes "*any* period of delay" relating to a defendant's incompetency, is a separate subsection from the transportation exclusion of § 3161(h)(1)(F). Thus, even if the transportation exclusion of § 3161(h)(1)(F) no longer applies to justify any ongoing delays, it remains that the Defendant's incompetency prevents any trial from proceeding, and therefore time remains excluded under § 3161(h)(1)(F).

As noted above, the Court shares the Defendant's concern, and is deeply frustrated with the delay in restoration. The Court understands that bed space in federal medical centers has been extremely limited, relating in part to the direct impact of the COVID-19 pandemic and infection rate throughout the prison system, and its indirect effect in delaying trial for (and requiring ongoing detention of) countless numbers of federal pretrial detainees. But while these issues may be understandable from an institutional perspective, that does not equate to justice in any particular case. For this reason, the Court declines to make ends-of-justice

findings justifying a continuance of the restoration hearing from the originally scheduled March date to June 7. But it remains that an ends-of-justice continuance is unnecessary, at least at this time. The delay in the restoration hearing simply automatically tolls Speedy Trial Act time based on a clear application of § 3161(h)(1)(F). Thus, after application of the statutory exclusions, the 70-day Speedy Trial Act clock has not come close to expiring, and there is no violation.

### B. *The Sixth Amendment Right To A Speedy Trial*

That the calculations of the Speedy Trial Act do not warrant dismissal is not the end of the story, of course. The Sixth Amendment more broadly guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ." U.S. CONST. AMEND. VI.

Rather than engaging in a strict mathematical analysis as often is required under the Speedy Trial Act, the Courts employ a more subjective balancing test to determine whether the Sixth Amendment's right to a speedy trial has been violated. The Supreme Court has identified four factors to balance: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's timely assertion of his speedy trial right; and (4) any actual prejudice suffered by the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Of these factors, the last factor (actual prejudice) is often considered to be the most important. The Eleventh Circuit has stated that "a defendant generally must show actual prejudice unless the first three factors ….

All weigh heavily against the government." *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003). The Defendant bears a "heavy burden" to show that dismissal is appropriate. *United States v. Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996).

As to the first factor—the length of the delay—any delay that exceeds one year is presumptively unreasonable. *United States v. Clark*, 83 F.3d 1350, 1352 (11th Cir. 1996). This presumption applies here, as Defendant's case is now approximately 20 months long. However, the courts have found that delays of this length are generally not so excessively long as to weigh heavily against the Government. *See, e.g., United States v. Bonilla*, 602 Fed.Appx. 667, 668 (9th Cir. 2015) (22 month delay not enough to weigh heavily against the government); *United States v. Serna-Villareal*, 352 F.3d 225, 232 (5th Cir. 2003) (42 month delay not enough to weigh heavily against the government); *Cf. Doggett v. United States*, 505 U.S. 647, 658 (1992) (eight year delay on its face weighed heavily against the government). Thus, the Court finds that the first factor weighs in Defendant's favor, but only slightly.

The second factor—the reason for the delay—is at most is neutral here, if not actually tilting in favor of the Government. Importantly, the delay here is clearly not because of any bad faith or other dilatory or vexatious acts or lack of reasonable diligence attributable to the prosecution or investigation of this case.

Indeed, approximately 15-16 of the approximately 20-month delay since arraignment has been attributable primarily to the *Defendant's* motions to continue, along with the initial competency examination. This delay was elongated because of attorney-client conflicts that resulted in a change of counsel, and the understandably extended time that it took for two separate lawyers to attempt to productively work with a defendant who was ultimately determined to have been mentally incompetent. Approximately 10 months of this period were also covered by the Court-wide orders limiting operations to protect the parties, courthouse staff, and the public during the unprecedented challenges created by the worldwide COVID-19 pandemic.

    Only 5 or so months of the delay so far has been specifically attributable to the failure of the BOP to designate a bed at an appropriate medical center, as required in the Court's November 2021 Order. And this delay, while frustrating and unfortunate, is not based on any apparent bad faith. Rather, the Court's understanding is that the overcrowded and congested nature of the federal prison system, combined with the lingering health impacts of and delays in trials created by the pandemic, has severely limited access to the BOP's limited hospitalization resources. While perhaps more resources should be devoted to this pressing need, that is an institutional issue requiring solutions at a political level. There is no basis to find that this widely-applicable problem is the result of any specific lack of

diligence, particularly on the part of any governmental actors involved in the prosecution or investigation of this case. Indeed, the courts have made clear that such institutional or budgetary-related delays are not to be afforded significant weight in the *Wingo* analysis. *See United States v. Loud Hawk*, 474 U.S. 302, 315-317 (1986) ("[D]elays that occur for valid reasons, such as overcrowded courts … will not be accorded heavy weight against the Government.")

In the end, the Court cannot weigh this factor in the Defendant's favor, and if anything, the extraordinary issues presented here weigh at least somewhat in the Government's favor.

The third factor—the Defendant's timely assertion of his speedy trial act rights—weighs in the Defendant's favor, although again only slightly. As noted above, roughly 75% of the period of the delay in this case was attributable to continuances actually requested by the Defendant. The Court finds these requests to be very appropriate and necessary and the result of proper attorney diligence. But it follows that, in effect, the Defendant not only failed to demand a speedy trial for over a year but was, in fact, the one to request that a speedy trial be delayed during most of that time.

Within the last five months, Defendant clearly asserted a desire to move the competency process along more quickly. The Defendant affirmatively filed a statement of "no objections" within short order of the issuance of the R&R on the

competency issue, and by informally followed up with the District Judge's Chambers to try to get an Order issued promptly. And of course, the Defendant has filed the instant motion in response to the failure of the BOP and the Marshals to transport Defendant within the timeframe contemplated by the statutes and by the District Judge's Order. Thus, the Court finds it proper to apply *some* weight in the Defendant's favor pursuant to factor three. However, balancing all of the circumstances, the quantum of that weight is not substantial at least at this juncture.

As for factor four—actual prejudice to the Defendant—the courts look to whether a defendant has shown harms such as "(1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) [a] possibility that the accused's defense will be impaired." *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003). Obviously, the most important of these potential harms is the third one. *Id*. Notably, Defendant does not make any argument as to any potential impact posed by this delay on his ability to defend himself.

Defendant's principal argument for prejudice is that this delay is potentially causing him to spend more time in custody than any likely sentence would require. Defendant is facing two firearms possession counts, which each carries a potential sentence of imprisonment of up to 10 years. 18 U.S.C. § 924(a). Obviously, Defendant's pretrial detention has not yet remotely approached those potential maximum terms. However, Defendant's counsel proffers, based on her analysis

and discussions with the prosecution, that the Defendant's offense level would be 17, with a criminal history of IV, resulting in an advisory guidelines range of only 37 to 46 months. Counsel further represents that a previous plea offer from the Government offered an additional point for acceptance of responsibility beyond that available under the guidelines themselves. Assuming this additional point, counsel believes that Defendant's guidelines range would reach as low as 33 months. Defendant has been in federal custody for only approximately 20 months, but has been detained for roughly 35 months in total including the period of state detention that pre-dated his federal arraignment. Thus, assuming all of these calculations and that Defendant would accept a plea, and accepting various other assumptions, Defendant argues he has already served more time than is warranted.

The Court finds it difficult to ascribe prejudice on the basis of counsel's speculation as to a likely sentence. Significantly, Defendant's speculation appears to contemplate a plea and plea agreement. But the Court can hardly assume that the Defendant would agree to such a plea, and of course he likely cannot even begin to consider such a weighty step if he is mentally incompetent. But it follows that the Court cannot speculate as to what Defendant's sentence might be based on hypothetical plea possibilities that Defendant has not yet agreed to and may not yet even be mentally competent to consider. There are many other levels of speculation that Defendant's argument rests on, including as to what Defendant's

15

offense and criminal history levels might be, when there has been no pretrial investigation conducted or report prepared; what sentence might actually be imposed, when the Court is not bound to the advisory guidelines range and has not heard any sentencing-related evidence; whether the BOP will give credit to Defendant's state custody that pre-dated his federal case; and whether the state, which still has pending charges against Defendant that remain the technical basis for this detention in this Court, will be satisfied with a sentence along the lines of counsel's hypothetical federal guidelines analysis and not seek additional time. Counsel's brief even includes speculation that Defendant might also earn credit for good behavior and thereby only serve 85% or so of any hypothetical sentence. While the Court has no specific reason to doubt these layers of speculation, they are just that, i.e., speculation. This is not a showing of actual prejudice at least at this juncture.[1]

In the end, while the Court finds that at least some of the *Wingo* factors might tilt slightly towards the Defendant, the overall balance of factors does not justify dismissal at least at this time. Defendant's motion should be denied.

---

[1] It also bears noting that at least some of the time already spent in pretrial custody, and hopefully most of the time after the upcoming scheduled transportation date, will have been spent in a federal medical center, not an ordinary jail. Indeed, the entire purpose of Defendant's upcoming hospitalization is for him to receive treatment to help resolve the disease or defect that has robbed Defendant of his mental competency. This is relevant to at least somewhat mitigate the impact or oppressiveness of Defendant's custody.

**CONCLUSION**

The Court **RECOMMENDS** that Defendant's Motion to Dismiss [76][80] be **DENIED**.

It is so **RECOMMENDED** this 19th day of April, 2022.

_____
**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**